IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No.: 1:24-cv-17-CCE-JLW

| | |
|---|---|
| JOHN DOE 1, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al.,<br><br>*Defendants*. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

NOW COME Defendants, by and through undersigned counsel, and respond in opposition to Plaintiffs' Motion to Supplement the Record in support of their Motion for Class Certification. [DE 87] Defendants appreciate the Court's order allowing them an opportunity to respond to Plaintiffs' motion to supplement the record. (*See* Text Order, Oct. 11, 2025.) Defendants respectfully object to the motion and maintain they are prejudiced by Plaintiffs' sudden reliance on these materials.

## INTRODUCTION

Class certification marks a pivotal juncture in litigation. Although not dispositive in the same sense as summary judgment, it is often outcome-determinative. That is why the Supreme Court and the Fourth Circuit have emphasized the need for a "rigorous analysis" of the Rule 23 factors. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). This analysis must be grounded in reliable evidence. The Federal Rules of Evidence make clear that personal knowledge is the foundation of reliability. *See* Fed. R. Evid. 602. And those rules apply fully to proceedings in this court, including motions for class certification. *See* Fed. R. Evid. 101, 1101.

1

On October 13, 2025, 12 days after the hearing on the motion for class certification and, coincidentally, the final day of fact discovery, Plaintiffs moved to supplement the class certification record with four "Monitoring Debrief Memos" prepared by Disability Rights North Carolina (DRNC), an advocacy group that works to challenge and change policies, practices, or structure that result in what it believes to be injustices or inequalities for disabled people. [DE 87] These memos are unsworn, unauthenticated, and replete with multiple layers of hearsay. [*See* DE 88-4, 88-5, 88-6, 88-7] They are not affidavits, declarations, or testimony, and they are not based on personal knowledge. Because the DRNC memos lack the indicia of reliability required under Rule 23, they should not be considered in the Court's class certification analysis.

In addition, Plaintiffs had these memos in their possession since, at the very latest, as far back as April of this year (Exhibit 1), yet failed to timely supplement their briefing. Plaintiffs' request to supplement the record at this late juncture appears to be a post hoc effort to cure evidentiary gaps they realized during the hearing. That is not a proper basis for reopening the record. Plaintiffs should not be allowed a do-over simply because the hearing revealed that their existing record does not support certification. Their motion to formally add these memos to the record after the hearing has concluded is both untimely and prejudicial and should be denied.

## LAW AND ARGUMENT

### I. Rule 23 and the Role of Evidence

Federal Rule of Civil Procedure 23 governs class certification, and the burden rests squarely on the party seeking certification to demonstrate that the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. The United States Supreme Court has made clear that this is not a perfunctory inquiry. Rather, courts must engage in a "rigorous analysis" to ensure that the prerequisites of Rule 23 are met. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350–51.

In conducting this analysis, courts may consider evidence submitted by the parties. There is a division among the circuits as to whether such evidence must be admissible under the Federal Rules of Evidence. Some courts require that evidence submitted in support of class certification meet strict admissibility standards, particularly for expert testimony. *See, e.g., In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012); *Unger v. Amedisys Inc.*, 401 F.3d 316, 319 (5th Cir. 2005). Other courts have held that a district court may consider evidence that would not be admissible at trial, so long as it is sufficiently reliable. *See, e.g., Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011).

The Fourth Circuit has not definitively resolved whether the Rules of Evidence strictly apply at the class certification stage. However, in *Davis v. Cap. One N.A.*, No. 24-1507, 2025 WL 2445880 (4th Cir. Aug. 26, 2025), the court recently made clear that evidence offered in support of class certification must be reliable. In that case, the Fourth Circuit affirmed the exclusion of expert testimony under Rule 702 and *Daubert*, holding that the expert's methodology was untested, produced a high error rate, and failed to reliably identify class members. *Davis*, 2025 WL 2445880. Although *Davis* addressed expert testimony, its reasoning applies more broadly: Rule 23's "rigorous analysis" requires that all evidence—whether expert, documentary, or testimonial—be capable of objective verification and grounded in reliable principles.

District courts within the Fourth Circuit have uniformly recognized that evidence submitted at the class certification stage must be reliable, but they differ in how strictly they apply the Rules of Evidence. For example, in *Soutter v. Equifax Info. Servs. LLC*, 299 F.R.D. 126 (E.D. Va. 2014), the court applied a rigorous evidentiary standard, striking a declaration submitted in opposition to

3

class certification under Fed. R. Evid. 602 because the affiant lacked personal knowledge. *Soutter*, 299 F.R.D. at 131. The court emphasized that "[t]he demand for a rigorous analysis of the class qualifying factors at the critical class certification stage makes it important that the evidence to be used in making that decision be reliable," and that "[t]he Federal Rules of Evidence teach that personal knowledge is the predicate of reliability." *Id.*. *Chittick v. Freedom Mortg. Corp.* followed *Soutter's* lead, rejecting hearsay statements, unauthenticated complaints, and internet postings as insufficiently reliable to support certification. *Chittick v. Freedom Mortg. Corp.*, No. 118CV00275AJTTCB, 2021 WL 5326407, at *6 (E.D. Va. May 7, 2021). The court reiterated that "the evidence to be used in making [the class certification] decision be reliable," and that personal knowledge is essential to that reliability. *Id.*

Other district courts have applied a more flexible approach, while still requiring that evidence be sufficiently trustworthy. In *Baxley v. Jividen*, the court allowed the use of a deposition from a different case because it was based on personal knowledge and functionally equivalent to an affidavit, even though it might not have been admissible at trial. *Baxley v. Jividen*, No. CV 3:18-1436, 2020 WL 7061752 (S.D.W. Va. Dec. 2, 2020). Likewise, in *Todd v. XOOM Energy Md., LLC*, the court concluded that while the Federal Rules of Evidence apply, they do so in a flexible manner that allows judges to weigh the reliability of evidence without rigid adherence to trial-level admissibility standards. *Todd v. XOOM Energy Maryland, LLC*, No. GJH-15-154, 2020 WL 4784767, at *7–8 (D. Md. Aug. 18, 2020).

Collectively, these cases reflect the Fourth Circuit's prevailing view that evidence submitted at the class certification stage must be reliable. They do not endorse the use of hearsay or unauthenticated materials as freely admissible. To the contrary, they reinforce that personal knowledge is the foundation of reliability under Rule 602, and that materials riddled with hearsay,

4

lacking authentication, or shielded from cross-examination fall short of the evidentiary threshold required to support class certification. The "rigorous analysis" required by *Wal-Mart* demands evidentiary integrity—not anecdotal assertions or mission-oriented compilations insulated from adversarial testing.

## II. The DRNC Memos Are Inadmissible Hearsay and Unreliable

The DRNC Memos are paradigmatic examples of hearsay layered upon hearsay. They consist of unsworn summaries of statements made by unidentified juveniles and staff, compiled by unidentified DRNC monitors. The memos are not declarations or affidavits. For example, the February 6, 2025 DRNC memo regarding Perquimans Juvenile Detention Center – dated more than three months after DRNC's visit – states "[s]everal youth reported concerns about educational access." DE 88-7 at 3. This statement reflects at least three layers of hearsay: (1) out-of-court statements made by unidentified youth and staff during interviews, (2) the monitors' paraphrased summaries of those statements, and (3) the final memorandum authored by an attorney who was not present for the interviews and who relays the monitors' impressions secondhand.

Moreover, Plaintiffs' initial disclosures (Exhibit 2) do not identify DRNC, or any witnesses from DRNC, nor have they supplemented their disclosures to identify any individuals affiliated with DRNC. The DRNC memoranda cited by Plaintiffs merely list the name of the person who authored the memo—not the individual(s) who actually visited the facility or conducted interviews with juveniles and staff. Plaintiffs have not indicated that any of these individuals will testify at trial, nor have they laid any foundation for the admissibility of the memos under the Federal Rules of Evidence.

Rule 23 requires that evidence supporting class certification be reliable, and under the Federal Rules of Evidence, that reliability depends on the evidence being based on personal

knowledge. *See Soutter*, 299 F.R.D. at 131–32. The DRNC memos fail that standard.[1] They are not affidavits, declarations, based on personal knowledge, and not subject to cross-examination. In sum, they and are simply not reliable evidence upon which this Court may conduct its rigorous analysis.

### III. The Memos Are Not New Evidence

Plaintiffs' request to supplement the record should also be denied because the DRNC memos are not truly "new" evidence, and their late submission is both improper and prejudicial. Plaintiffs have had these memos since at least as far back as April of this year (Exhibit 1), yet *never* attempted to supplement the record in support of their motion for class certification. And they failed to do so even after this Court noticed it would hold a hearing on the class certification issue. Indeed, it was only after the hearing that they attempted to come forward with their "new" evidence.

Generally, a party seeking to supplement the record with new evidence must show not only that the evidence was newly discovered or previously unknown, but also that it could not have been discovered and produced earlier through reasonable diligence. *See Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989) (a movant seeking to supplement the record with new evidence "is obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such

---

[1] The DRNC memoranda already before the Court [DE 47-3, 47-4] suffer from the same evidentiary flaws as those Plaintiffs now seek to add. As Defendants argued at the hearing, these DRNC reports reflect inconsistent and conflicting anecdotal accounts that undermine their probative value (Exhibit 4). Plaintiffs' attempt to now supplement the record with more of the same unreliable material—after the hearing—only compounds the evidentiary deficiencies already before the Court.

evidence at the hearing.") Plaintiffs make no such showing here. Their failure to timely submit the DRNC memos—despite having them in hand for nearly 6 months—should preclude their use now.

## IV. Allowing Plaintiffs To Supplement Now Would Unfairly Prejudice Defendants

Although Plaintiffs produced these DRNC memos in discovery in April 2025, they never indicated that they intended to rely on them as evidence in support of class certification. Instead, Plaintiffs first referenced the memos during the October 1, 2025, hearing, stating that they had received additional reports from DRNC after briefing concluded and that those reports supported their allegations of the prevalent use of solitary confinement at facilities beyond Cabarrus and Dillon. Plaintiffs offered the post-briefing timing of the DRNC memos as an excuse for not including them earlier, but nothing prevented them from supplementing their motion or reply at any point in the six months prior to the hearing or seeking leave to do so. (Exhibit 3)

This late reliance on the DRNC memos is prejudicial. The memos contain factual allegations from unidentified declarants and third-party observations. Rebutting them would require significant post-hearing investigation, including identifying the source of the information, reviewing facility-specific records, and obtaining counter-declarations. That work cannot be done fairly after the hearing has occurred and the record has effectively closed.

Plaintiffs' reliance on cases permitting supplementation is also misplaced. In each of those cases, supplementation occurred either as part of a court-managed process or before the hearing concluded—not after the fact. For example, in *Mr. Dee's*, the court invited post-hearing submissions and supplemental briefing. *Mr. Dee's Inc. v. Inmar, Inc.*, No. 1:19-CV-141, 2023 WL 5436178, at *10 (M.D.N.C. Aug. 23, 2023), *aff'd,* 127 F.4th 925 (4th Cir. 2025). In *Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821 (D. Md. 2012), the plaintiff supplemented the record during a period of agreed-upon limited discovery, and the supplementation occurred

before the defendant filed its response. *See Essame*, 847 F. Supp. 2d at 824–25. In *Anderson*, the court permitted supplementation with a single affidavit and document, without any indication that the evidence introduced new factual allegations or required rebuttal. *See* DE 88-8.

As this Court has recognized, even when a party possesses a document, prejudice may arise when the opposing party is not given a fair opportunity to respond to its use in support of a dispositive motion. In *Maisha v. University of North Carolina*, the Court excluded a witness declaration where the opposing party had no opportunity to investigate or prepare rebuttal evidence, emphasizing that "the prejudice to the defendants is obvious." *Maisha v. Univ. of N. Carolina*, No. 1:12-CV-371, 2015 WL 224939, at *5 (M.D.N.C. Jan. 15, 2015), *aff'd*, 641 F. App'x 246 (4th Cir. 2016). The same is true here. Plaintiffs' post-hearing reliance on the DRNC memos deprived Defendants of the opportunity to meaningfully respond, and the prejudice cannot be cured by a belated opportunity to file rebuttal evidence. The hearing has already occurred and discovery has closed. The bell cannot be unrung.

## **CONCLUSION**

The DRNC memos are inadmissible hearsay, lacking personal knowledge, authentication, or any applicable exception. They are not affidavits or declarations, and they are not reliable. Nor are the memos "new." Plaintiffs received them months before the hearing and chose not to move the court to allow supplementation of the record prior to the hearing. Their post-hearing reliance on these materials unfairly prejudices Defendants, who had no meaningful opportunity to respond. The hearing has concluded, discovery is closed, and the prejudice cannot be cured. The Court should deny Plaintiffs' motion to supplement the record and decline to consider the DRNC memos in ruling on class certification.

8

Respectfully submitted, this the 21st day of October 2025.

**JEFF JACKSON**
**Attorney General**

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
Email: eobrien@ncdoj.gov

Matthew Tulchin
Special Deputy Attorney General
N.C. State Bar No. 43921
Email: mtulchin@ncdoj.gov

Laura H. McHenry
Special Deputy Attorney General
N.C. State Bar No. 45005
Email: lmchenry@ncdoj.gov

N.C. Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6900
Facsimile: (919) 716-6763

*Counsel for State Defendants*

9

# CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), I certify that the body of this memorandum, including headings and footnotes but excluding the caption, signature lines, certificates and any cover pages or indices, does not exceed 6,250 words.

This the 21st day of October, 2025.

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien

10

Case 1:24-cv-00017-CCE-JLW   Document 89   Filed 10/21/25   Page 10 of 10