IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN DOE 1, a minor by and through his natural parent and guardian JANE DOE 1, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:24-CV-17 |
| NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

Plaintiffs John Doe 1 and John Doe 2 were, at the time the complaint was filed, juveniles in state custody at the Cabarrus Juvenile Detention Center awaiting adjudication of charges against them. They allege that the state keeps them and other juveniles in solitary confinement for many hours a day and does not provide basic educational services. They challenge the constitutionality of these practices and seek declaratory judgment and injunctive relief on behalf of a class of all juveniles at all state juvenile detention centers or, in the alternative, juveniles at the Cabarrus Detention Center.

In its discretion, the Court will deny the motion for certification of a statewide class, given the commonality, typicality, and manageability problems that class would present. But the Court will certify a class of juvenile pretrial detainees held at the Cabarrus Juvenile Detention Center. As to this class, the plaintiffs have shown that a

class action is an appropriate way to resolve the constitutional claims they raise and the requirements of Fed. R. of Civ. P. 23 have been met.

Specifically, the Court will certify the following class:

> All pre-adjudication juveniles who are currently, or in the future will be, detained in the Cabarrus Juvenile Detention Center.

## I. The Plaintiffs and Their Claims

### A. Factual Claims

Beginning in November 2023, John Doe 1 and John Doe 2 were detained at the Cabarrus Juvenile Detention Center pending adjudication of criminal or delinquency charges. Doc. 1 at ¶¶ 20–21, 161, 176; Doc. 40-2 at ¶ 3; Doc. 40-3 at ¶ 3. At that time, John Doe 1 was 15 years old, and John Doe 2 was 16 years old. Doc. 1 at ¶¶ 20–21.[1] They each allege they have been held in solitary confinement much of the time since they arrived, *id*. at ¶¶ 163, 179; Doc. 40-2 at ¶¶ 6–7; Doc. 40-3 at ¶¶ 5–6, and that they have not received meaningful educational services. Doc. 1 at ¶¶ 170, 186; Doc. 40-2 at ¶ 20; Doc. 40-3 at ¶ 19. According to their declarations, they and others have been held in solitary room confinement because the detention center is understaffed, not in response to misconduct or for other legitimate reasons. Doc. 40-2 at ¶ 7; Doc. 40-3 at ¶ 6.

---

[1] On September 26, 2024, when the plaintiffs filed for class certification, John Doe 1 was 16 years old and John Doe 2 was 17 years old. Doc. 40-2 at ¶ 2; Doc. 40-3 at ¶ 2. John Doe 1 is now 17 years old, and John Doe 2 is 18 years old. John Doe 2 is no longer in a juvenile detention facility. Doc. 83 at ¶ 7. The fact that the personal claim of John Doe 2 may be moot does not moot the class claims. "The fact that a class was not certified until after the named plaintiffs' claims had become moot does not deprive a court of jurisdiction when the harms alleged are transitory enough to elude review." *Nielsen v. Preap*, 586 U.S. 392, 403 (2019) (cleaned up); *see also Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (assuming that the named plaintiffs were no longer in custody awaiting trial at the time the court certified a class of pretrial detainees and holding the class action claims were not moot).

John Doe 1 and John Doe 2 describe solitary confinement as confinement to their own individual cells for more than 23 hours a day, Doc. 40-2 at ¶ 12; Doc. 40-3 at ¶ 12, with only a window to the outside and a window in the door looking into the interior of the detention center.  Doc. 1 at ¶¶ 162, 177; Doc. 40-2 at ¶ 8; Doc. 40-3 at ¶ 7.  Among other things, they assert that the interior cell windows are often covered, so they cannot look into the detention center, Doc. 1 at ¶¶ 169, 184; Doc. 40-2 at ¶¶ 8, 17; Doc. 40-3 at ¶ 16; they are not allowed to communicate with other detainees from their cells, Doc. 1 at ¶ 169; Doc. 40-2 at ¶ 17; they eat their meals alone in their cells, Doc. 1 at ¶ 166; Doc. 40-2 at ¶ 16; Doc. 40-3 at ¶ 15; they do not receive any mental health treatment, Doc. 1 at ¶ 187; Doc 40-3 at ¶ 20; educational opportunities are brief and do not rise to the level of basic educational services, Doc. 1 at ¶¶ 53, 55; and they are allowed out of their cells only for showers and other brief periods.  *Id*. at ¶¶ 20, 55, 164, 180; Doc. 40-2 at ¶ 12; Doc. 40-3 at ¶ 12.  They allege that other pretrial detainees in the facility are being held in similar conditions.  Doc. 1 at ¶¶ 63–67, 89, 132–33, 140–51.

These conditions, the plaintiffs allege, cause psychological harm for all detained children.  *Id*. at ¶¶ 92, 95.  The harm and increased risk of harm is worse for detained juveniles who already suffer from mental health problems, which many detained children have.  *Id*. at ¶ 100; Doc. 40-1 at ¶ 23.  These conditions of confinement can cause long-term harm.  Doc. 1 at ¶¶ 97–99.

B. Asserted Causes of Action

The plaintiffs allege that the defendants' room confinement policies and practices violate their Fourteenth Amendment substantive due process rights.  *Id*. at ¶¶ 209–16.

3

They also assert that these policies and practices violate Eighth Amendment protections against cruel and unusual punishment. *Id*. at ¶¶ 220–26.

"[I]t is settled that pretrial detainees possess a constitutional right to be free from punishment." *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (cleaned up) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The right of pretrial detainees to be free from punishment derives from the Due Process Clause of the Fourteenth Amendment. *Id*. To prevail on a substantive due process claim, the pretrial detainee must show, as is relevant here, that the conditions imposed are "not reasonably related to a legitimate nonpunitive governmental objective." *Id.* at 174 (cleaned up).[2] While officials of a detention facility can impose permissible disciplinary restrictions, that is so only if those restrictions are intended to and are reasonably related to "the effective management of the detention facility." *Id.* at 176 n.18 (cleaned up). But if such measures are excessive or arbitrary, they may constitute unconstitutional punishment. *Id*.

The elements of an Eighth Amendment claim are different. To prevail, a plaintiff must show "(1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (cleaned up). Deliberate indifference can meet the second, "sufficiently culpable" requirement. *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016). "To be sufficiently serious the deprivation

---

[2] The plaintiffs do not contend that the defendants are imposing solitary confinement statewide or facility-wide with "an expressed intent to punish," which is another way to show a substantive due process violation. *See Williamson*, 912 F.3d at 174.

must be extreme—meaning that it poses a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of serious harm resulting from exposure to the challenged conditions." *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019) (cleaned up).

## II. The Plaintiffs' Requested Classes

The plaintiffs now move for class certification. Doc. 39 at ¶¶ 7, 9–10; Doc. 40 at 13–25. They propose an injunctive class under Rule 23(a) and 23(b)(1), (2), and (3) with the following class definition:

> All juveniles who are currently, or in the future will be, detained in a North Carolina juvenile detention facility operated by NCDPS (the "Statewide Class").

Doc. 1 at ¶ 205; Doc. 40 at 12. In the alternative, they suggest a more limited class definition confined to the Cabarrus facility:

> All juveniles who are currently, or in the future will be, detained in the Cabarrus Juvenile Jail (the "Cabarrus Class").

Doc. 1 at ¶ 205; Doc. 40 at 12.

The defendants challenge class certification on commonality and typicality grounds and contend that none of the Rule 23(b) requirements are met. Doc. 45 at 7–19. Each party filed briefs with evidentiary support. Docs. 40, 45, 47. The Court held a hearing on October 1, 2025. Minute Entry 10/01/2025.

## III. Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S.

5

27, 33 (2013) (cleaned up).  To qualify for the exception, the plaintiffs "must affirmatively demonstrate their compliance" with Federal Rule of Civil Procedure 23. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (cleaned up).  District courts must rigorously assess the proffered evidence, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011), but they have "wide discretion" in evaluating whether the Rule 23 requirements have been met, in light of their experience and expertise in managing complex litigation.  *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010); *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (noting that district courts "have broad power and discretion vested in them" as to the "certification and management of potentially cumbersome" class actions).  While a full-scale merits evaluation is not appropriate, a court should consider merits questions if they are "relevant to determining whether Rule 23 prerequisites for class certification are satisfied."  *Glover v. EQT Corp.*, 151 F.4th 613, 618 (4th Cir. 2025) (cleaned up).

There are a number of requirements plaintiffs must meet to obtain class certification.  As a threshold requirement, the class representatives must be members of the class they seek to represent.  The plaintiffs must also meet the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  Finally, the plaintiffs must satisfy the requirements of at least one of the subsections of Rule 23(b).

## IV. The Threshold Requirements

As a threshold matter, Rule 23 requires that the proposed class representatives be members of the proposed class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–

26 (1997); *see also* Fed. R. Civ. P. 23(a). As noted *supra*, the proposed injunctive class consists of:

> All juveniles who are currently, or in the future will be, detained in a North Carolina juvenile detention facility operated by NCDPS (the "Statewide Class").
>
> [or in the alternative]
>
> All juveniles who are currently, or in the future will be, detained in the Cabarrus Juvenile Jail (the "Cabarrus Class").

Doc. 1 at ¶ 205; Doc. 40 at 12.

John Doe 1 is housed at the Cabarrus Juvenile Detention Center operated by NCDPS, Doc. 40-2 at ¶¶ 3–4, and thus he is a member of each of the proposed classes. John Doe 2 was housed at the Cabarrus Juvenile Detention Center when the complaint and motion for class certification were filed, Doc. 40-3 at ¶ 3; Doc. 83 at ¶ 7, and thus was a member of the proposed classes at the relevant time. The defendants do not contend otherwise. *See* Doc. 45.

### V. Certification of the Requested Statewide Class is Inappropriate

In its discretion, the Court will not certify the requested Statewide Class covering all NCDPS juvenile detention centers. While the plaintiffs have presented evidence that all detention facilities have the same written policies on room confinement, their evidence that the policies are implemented in the same way statewide is thin. Indeed, they acknowledge some differences in the complaint. *See* Doc. 1 at ¶ 55 (noting that how much time detained children are allowed out of their cells can "depend[] on the detention center."). At least one facility has a dormitory layout rather than individual rooms,

making that facility atypical. *See* Doc. 86 at 18–19; *G.T. v. Bd. of Educ. of the Cnty. of Kanawha*, 117 F.4th 193, 202 (4th Cir. 2024) ("Dissimilarities within the proposed class have the potential to impede the generation of common answers." (cleaned up)). It is not clear that the evidence will be common across all facilities or that the answer of whether there is a due process violation will be the same for all facilities.

A statewide class involving nine detention centers[3] will be more complex for remaining discovery, for summary judgment briefing, and for trial, and it is less likely that meaningful injunctive relief can be crafted across several different facilities. Moreover, as discussed *infra*, the amended Cabarrus Class provides a manageable group to resolve these due process claims.

Most cases involving similar challenges have certified narrower classes. *See Alex. A. ex rel. Smith v. Edwards*, No. 22-573, 2023 WL 5628592, at *4 (M.D. La. Aug. 31, 2023) (a class of juveniles from one detention facility at risk of being transferred to another detention facility); *Wilburn v. Nelson*, 329 F.R.D. 190, 193 (N.D. Ind. 2018) (a class of all juveniles held in solitary confinement from one specific detention facility); *A.T. ex rel. Tillman v. Harder*, 298 F. Supp. 3d 391, 404 (N.D.N.Y. 2018) (a class of all 16 and 17 year olds housed at one specific detention facility); *V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 564 (N.D.N.Y. 2017) (a class of all 16 and 17 year olds housed at one specific detention facility); *J.D. v. Nagin*, 255 F.R.D. 406, 409 (E.D. La. 2009) (class of all juveniles housed at one specific detention facility); *Doe ex rel. Frazier*

---

[3] NCDPS, Juvenile Detention Centers, https://www.ncdps.gov/our-organization/juvenile-justice/juvenile-facility-operations/juvenile-detention-centers (last visited Oct. 14, 2025).

*v. Hommrich*, No. 16-CV-799, 2017 WL 660681, at *1–2, 5 (M.D. Tenn. Feb. 17, 2017) (narrowing the plaintiffs' requested class of all juveniles from any facility operated by the Tennessee Department of Children's Services to all juveniles placed in solitary confinement for punitive reasons housed at one specific detention facility); *but see, G.H. v. Tamayo*, 339 F.R.D. 584, 587 (N.D. Fla. 2021) (a class of all juveniles under the purview of the Florida Department of Juvenile Justice's solitary confinement policies). The Fourth Circuit has also noted that "[t]ypically, a substantive due process claim pursued by a pretrial detainee challenges the general conditions of confinement or the treatment of all detainees in a specific facility." *Williamson*, 912 F.3d at 174.

The plaintiffs have moved to supplement the record with additional evidence in support of a statewide class, Doc. 87, which the defendants oppose. Doc. 89. The motion to supplement will be granted. But, as the defendants point out, the reports have multiple layers of hearsay and are unlikely to be admissible as common evidence at trial. Even considering this evidence, a statewide class remains cumbersome and inefficient. The reports the plaintiffs offer show a variety of different circumstances and situations for different juveniles. *See* Docs. 88-4 through 88-7.

The motion to certify the statewide class will be denied.

## VI. The Cabarrus Class

In the alternative, the plaintiffs request a class defined as, "All juveniles who are currently, or in the future will be, detained in the Cabarrus Juvenile Jail." Doc. 1 at ¶ 205; Doc. 40 at 12. Because the post-adjudication detainees are not numerous in the Cabarrus facility, and the addition of class members who have different claims reduces

9

commonality and will cause unneeded complexity, the Court will modify the definition to only include pre-adjudication juveniles. The Court will also use the title "Cabarrus Juvenile Detention Center." As amended, the Court will grant the plaintiffs' motion to certify the Cabarrus Class.

### A. Rule 23(a) Requirements

Plaintiffs seeking class certification must meet the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Peters v. Aetna Inc.*, 2 F.4th 199, 241 (4th Cir. 2021); Fed. R. Civ. P. 23(a). "These four requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (cleaned up). The plaintiffs have satisfied these requirements for the Cabarrus Class, as amended.

#### 1. Numerosity

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "no specified number is needed to maintain a class action, . . . a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (cleaned up).

The plaintiffs have satisfied the numerosity requirement for the Cabarrus Class. The Cabarrus Juvenile Detention Center had an average daily population of 71.8 in 2023, the same year the named plaintiffs were admitted. NCDPS, *Juvenile Justice and Delinquency Prevention Annual Report 2023* at 19,

10

https://www.ncdps.gov/division/juvenile-justice/2023-jjdp-annual-report/download?attachment. (last visited 10/22/25).  In 2023, juvenile detainees statewide averaged 35 days in juvenile detention centers, thus the yearly population of the Cabarrus Juvenile Detention Center is in the hundreds.  *Id.* at 16.  Counsel represented at oral argument, without dispute from the defendants, that almost all of those held in the Cabarrus Juvenile Detention Center are pre-adjudication detainees.  Doc. 86 at 7.  Joinder of that many plaintiffs would be impracticable.

It is not clear that there are a meaningful number of post-adjudication juveniles at the Cabarrus facility.

### 2. Commonality, Typicality, and Adequate Representation

The requirements of commonality, typicality, and adequacy of representation have significant overlap.  *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006); *Wal-Mart*, 564 U.S. at 349 n.5.  To satisfy the commonality requirement, "even a single common question will do," *Wal-Mart*, 564 U.S. at 359 (cleaned up), "but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (cleaned up); *accord Carolina Youth*, 60 F.4th at 780.  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *G.T.*, 117 F.4th at 202 (4th Cir. 2024) (cleaned up) (quoting *Wal-Mart*, 564 U.S. at 349–50).  "It is not enough that the class members have all suffered a violation of the same provision of law." *Id.* (cleaned up).  Plaintiffs must identify "a single or uniform policy or practice that bridges all of their claims." *Id.* at 205 (cleaned up).

11

"The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (cleaned up). While the interests of the named plaintiffs in prosecuting their case "must simultaneously tend to advance the interests of the absent class members," claims of the class representative and claims of the class need not "be perfectly identical or perfectly aligned." *Deiter*, 436 F.3d at 466–67.

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625; *accord Carolina Youth*, 60 F.4th at 780. It also serves to assess "competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20; *accord Wal-Mart*, 564 U.S. at 349 n.5.

The plaintiffs have satisfied the commonality requirement for the Cabarrus Class, as amended to include only pre-adjudication detainees. The overarching question for resolution is a common one: whether the NCDPS policies and practices of room confinement at the Cabarrus Juvenile Detention Center violate the Fourteenth Amendment rights of pre-adjudication juveniles. The answer to this question will depend on other common factual questions, such as what are the NCDPS' policies on room confinement and how are they applied, and common legal questions such as at what point does a regular practice of room confinement become unconstitutional.[4] The answers will

---

[4] Based on the discussion at oral argument, the defendants do not contend that it is constitutionally acceptable to keep a juvenile in solitary room confinement for days on end, absent a clear disciplinary reason or facility management issue specific to the individual juvenile.

12

apply to all pre-adjudication detainees, currently or in the future, at the Cabarrus Juvenile Detention Center operated by the NCDPS. District courts across the country have certified similar classes. *See Wilburn*, 329 F.R.D. at 193 (a class of all juveniles held in solitary confinement from one specific detention facility); *J.D.*, 255 F.R.D. at 417 (class of all juveniles housed at one specific detention facility); *A.T.*, 298 F. Supp. 3d at 404 (a class of all 16- and 17-year-olds housed at one specific detention facility).

The plaintiffs contend that the class should cover those juveniles whose charges have been adjudicated as well as the pre-adjudication juveniles. *See* Doc. 1 at ¶¶ 33, 43; Doc. 40 at 12. Neither John Doe 1 nor John Doe 2 is an adjudicated juvenile. Doc. 1 at ¶¶ 161, 176. More importantly, different constitutional standards apply to pretrial detainees and convicted persons. *See, e.g., Bell*, 441 U.S. at 535–36; *see also supra* at 4–5. Commonality is undermined by the inclusion of adjudicated juveniles.[5]

Most of the defendants' objections to commonality and typicality are removed by certifying only the Cabarrus Class as opposed to a statewide class and by limiting the class to only pre-adjudication detainees. Doc. 45 at 8. Otherwise, the defendants contend that the justifications, length, and nature of the room confinements vary from juvenile to juvenile such that the plaintiffs have not shown a common risk of harm through common

---

Doc. 86 at 36. They deny that they do so. Among other things, the plaintiffs contend that almost all room confinement for juveniles is unconstitutional. *Id.* at 70.

[5] During oral argument, the plaintiffs contended that they will meet the higher Eighth Amendment standard so that the different standard for pretrial detainees will not matter. Doc. 86 at 20. Perhaps they will. But the standards are different, and another possibility is that the plaintiffs will not meet the Eighth Amendment standard and will meet the Fourteenth Amendment standard. While perhaps unlikely, inclusion of post-adjudicated juveniles thus has the potential to raise conflicts among class members.

questions and answers and that their contentions are unsupported by evidence. *Id*. at 8–9. But the plaintiffs have offered such common evidence through their own testimony, evidence from an expert, and reports by North Carolina Disability Rights. Doc. 40-1; Doc. 47-3. The defendants can challenge that evidence on the merits at summary judgment and, if necessary, at trial.

The defendants contend that the plaintiffs have failed to show a common injury because each juvenile may have experienced different mental health issues attributable to any confinement. *Id*. at 12–15. But the harm here is, at least in part, the confinement itself. As the court noted in *Alex. A.*, commonality and typicality are satisfied where all class members are subject to the same procedures "and may have experienced the same alleged harm of continuous cell restrictions and a lack of educational, rehabilitative, recreational, mental health services." 2023 WL 5628592, at *6 (cleaned up).

For the same reasons, the named plaintiffs' claims are typical of the unnamed members of the putative class. They have resided in the Cabarrus Juvenile Detention Center, have been pre-adjudication detainees, and have been subject to the same policies and practices. *See* Doc. 45-3 at ¶¶ 4–17 (Declaration of Tiea Daniels confirming the relevant policies are practiced at the Cabarrus Juvenile Detention Center.). John Doe 1 is still confined there.

The defendants again contend that various reasons for a placement in room confinement, the length of that placement, and the conditions attendant to that placement vary among detainees such that their claims cannot be typical. Doc. 45 at 15. But the plaintiffs are not challenging individual decisions as to individual juveniles; they rely on

14

the same legal theories to challenge the same policies and broad practices. This makes their claims typical, even with potential fact differences among individual detainees. *See e.g.*, *Wilburn*, 329 F.R.D. at 196–97 (finding typicality met where "the Plaintiffs challenge the same JJC practices . . . and will need to rely on the same legal theories to prove their claims . . . . even in the face of potential fact differences between the individual detainees").

The plaintiffs have also satisfied the adequacy requirement. John Doe 1 and John Doe 2[6] have been active participants in this litigation by providing declarations and sitting for interviews with the plaintiffs' expert witness. *See* Doc. 40-2 (declaration of John Doe 1); Doc. 40-3 (declaration of John Doe 2); Doc. 40-1 at ¶ 15 (declaration of Dr. Kraus). They are willing to serve as class representatives and understand the nature of being a class representative. *See* Docs. 40-2 at ¶¶ 23–24; 40-3 at ¶¶ 23–24. There are no evident conflicts between the named plaintiffs and the class members.

Plaintiffs' Counsel will adequately represent the class. The Court has independently reviewed the qualifications, experience, knowledge of the law, and resources of Plaintiffs' Counsel. They have extensive experience in complex civil litigation and class actions. *See* Docs. 40-7 through 40-9. Plaintiffs' Counsel's

---

[6] Although John Doe 2 is no longer detained at the Cabarrus Juvenile Detention Center, Doc. 83 at ¶ 7, he remains an adequate class representative. Class members whose claims are no longer live may adequately represent the class on a going-forward basis. *See Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 325 (4th Cir. 2022) (cleaned up) ("Where a named plaintiff's individual claim becomes moot before the district court has an opportunity to certify the class, the certification may relate back to the filing of the complaint if *other* class members will continue to be subject to the challenged conduct and the claims raised are inherently transitory.").

qualifications will be discussed in more detail *infra* at 17–18 when addressing appointment of class counsel.

The plaintiffs have satisfied the Rule 23(a) requirements for the amended Cabarrus Class.

**B. Rule 23(b) Requirements**

A plaintiff pursuing a class action must establish that the case fits into at least one of the three subsections of Rule 23(b). *Comcast*, 569 U.S. at 33. The plaintiffs contend that certification is appropriate under all three subsections. Doc. 40 at 21–25. Because certification of the amended Cabarrus Class is appropriate under Rule 23(b)(2), there is no need to address the plaintiffs' requests for certification under Rule 23(b)(1) or (b)(3).

Under Rule 23(b)(2), the plaintiffs must show that the defendants acted on grounds generally applicable to the class that make injunctive or declaratory relief appropriate for the class as a whole. Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

The plaintiffs have satisfied the Rule 23(b)(2) requirement for the amended Cabarrus Class. The room confinement policies apply to every member of the class. The declaratory and injunctive relief the plaintiffs seek, Doc. 1 at ¶ 14, will provide relief to each member of the class, as the defendants will cease the challenged policies and practices to the extent that they are found unconstitutional. If the plaintiffs prove their

16

14th Amendment claim, a classwide injunction would be an appropriate remedy to prevent future unconstitutional harm against all members of the class. Other courts have certified class actions on similar claims under Rule 23(b)(2). *See e.g.*, *J.D.*, 255 F.R.D. at 416 (noting that "class certification under Rule 23(b)(2) is an appropriate case management tool for cases involving juvenile detention centers").

The defendants contend that Rule 23(b)(2) is inapplicable because the plaintiffs' allegations are unsupported. As already noted, they have offered common evidence about the alleged constitutional violations sufficient at this stage, and credibility and merits challenges will be decided later. The defendants also assert that the detainees' experiences differ such that relief would not be available to the whole class. That does not seem likely, and many courts have certified class actions under Rule 23(b)(2) in cases involving challenges to the practices of a detention facility. *See id*; *A.T.*, 298 F. Supp. 3d at 411; *Hommrich*, 2017 WL 660681, at *1–2, 5.

## VII. Appointment of Class Representatives and Class Counsel

The plaintiffs move to be appointed as class representatives, and they move for appointment of their attorneys as class counsel. Doc. 39 at ¶ 9; Doc. 40 at 19–21. As stated *supra* at 15, the plaintiffs are adequate representatives of the class. John Doe 1 and John Doe 2 will be appointed class representatives of the class.

Plaintiffs' Counsel, attorneys with Nelson Mullins Riley & Scarborough, LLP and the Law Office of Michelle Duprey, are adequate representatives of the class and are capable of proceeding as class counsel. The defendants make no argument to the contrary. Plaintiffs' Counsel have extensive experience in complex civil and class

17

Case 1:24-cv-00017-CCE-JLW     Document 90     Filed 10/22/25     Page 17 of 19

litigation, *see* Doc. 40-7 at ¶ 2; Doc. 40-8 at ¶ 2, and the subject matter issue in this litigation. Doc. 40-9 at ¶ 2. Mr. Lindenbaum has served as class counsel in other cases in federal courts. *See* Doc. 40-8 at ¶ 2. The Court will appoint Plaintiffs' Counsel as class counsel for the class.

## VIII. Conclusion

In its discretion, the Court will not certify the requested Statewide Class covering all the NCDPS juvenile detention centers. It is not clear that the evidence will be common enough across all facilities, a statewide class will be unduly complex and cumbersome, and courts with similar cases have certified narrower classes.

The Court will certify the amended Cabarrus Class under Rule 23(b)(2). Including only pre-adjudication juveniles is appropriate because the Cabarrus facility houses almost entirely pre-adjudication juveniles, including the named plaintiffs, and the constitutional standards differ for pre- and post-adjudication children. John Doe 1 and John Doe 2 are members of the class, and they have met the threshold requirements. The class is sufficiently numerous, and there is an overarching common question likely to be dispositive. The plaintiffs' claims are typical, and they and their counsel are adequate representatives. The defendants act on grounds generally applicable to the class, making injunctive relief appropriate to the class as a whole. John Doe 1 and John Doe 2 will be appointed as class representatives, and their counsel will be appointed as class counsel.

It is **ORDERED** that

1. The plaintiffs' motion for class certification, Doc. 39, is **GRANTED in part** and the following class is **CERTIFIED**:

a. All pre-adjudication juveniles who are currently, or in the future will be, detained in the Cabarrus Juvenile Detention Center.

2. The plaintiffs, John Doe 1 and John Doe 2, are **APPOINTED** as class representatives.

3. Plaintiffs' Counsel, Axton Crolley, Donna Tillis, Matthew Lindenbaum, Soren Young, Yasmeen Ebbini, Robert Lindholm, and Nelson Mullins Riley & Scarborough LLP and Michelle Duprey and Law Office of Michelle Duprey are **APPOINTED** as class counsel.

4. The plaintiffs' motion for class certification, Doc. 39, is otherwise **DENIED**.

5. The motion for leave to supplement the record, Doc. 87, is **GRANTED** and the Court has considered the proffered materials.

This the 22nd day of October, 2025.

_____
UNITED STATES DISTRICT JUDGE

19

Case 1:24-cv-00017-CCE-JLW    Document 90    Filed 10/22/25    Page 19 of 19