# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN DOE 1, a minor, by and through his parent and natural guardian JANE DOE 1; JOHN DOE 2, a minor, by and through his parent and natural guardian JANE DOE 2; on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY; JEFFREY SMYTHE, Secretary of the North Carolina Department of Public Safety, in his official capacity; WILLIAM L. LASSITER, Deputy Secretary of the Division of Juvenile Justice and Delinquency Prevention, in his official capacity; TIEA DANIELS, Facility Director of the Cabarrus Regional Juvenile Detention Center, in her official capacity,

      Defendants.

No. 1:24-CV-00017-CCE-JGM

**DECLARATION OF ROBERT L. LINDHOLM IN SUPPORT OF JOINT MOTION FOR FINAL SETTLEMENT APPROVAL**

I, Robert L. Lindholm, hereby declare under penalty of perjury:

1. I am an attorney duly licensed to practice law in the State of North Carolina and am admitted to practice in the Middle District of North Carolina. I am a Partner at the law firm of Nelson Mullins Riley & Scarborough LLP. I have been appointed counsel for the class in this litigation. As such, I am fully familiar with the facts and circumstances of this proceeding. I submit this Declaration in support of the Parties' Joint Motion for Final

Approval of Settlement Agreement (the "Motion"). This Declaration is based on my personal knowledge.

2.     On April 15, 2026, the parties jointly filed their proposed settlement agreement with the Court [D.E. 104-1] as an attachment to their Joint Motion to Approve Preliminary Settlement (the "Proposed Settlement Agreement"). The Proposed Settlement Agreement filed at Docket Entry 104-1 is a true and correct copy of the settlement agreement for which the Parties now seek the Court's final approval.

**Litigation History**

3.     Plaintiffs have conducted extensive discovery in this matter.  Plaintiffs have served 108 requests for production, 29 interrogatories, and 23 requests for admission.  In response, Defendants have produced hundreds of thousands of pages of documents, including internal emails from dozens of custodians and log files showing instances of confinement at the Cabarrus Juvenile Detention Center ("JDC").

4.     Plaintiffs have inspected three juvenile detention centers, including the Cabarrus JDC.

5.     Plaintiffs have taken seven depositions, including a corporate representative deposition of the North Carolina Department of Public Safety ("NCDPS") and depositions of key leaders within NCDPS and at the Cabarrus JDC.

6.     Defendants, in turn, have deposed both class representatives.

7.     Both sides have designated expert witnesses and have served expert reports.

8.     As of February 26, 2026, when the Parties notified the Court of the proposed

settlement, the only discovery outstanding was depositions of both sides' expert witnesses and depositions of two NCDPS fact witnesses, pursuant to the Court's February 20, 2026 Text Order.

9.     Plaintiffs sought discovery from third party Disability Rights North Carolina ("DRNC"), an organization that monitors the conditions at North Carolina juvenile detention centers, resulting in motion practice in the Eastern District of North Carolina when DRNC resisted the subpoena.  The discovery received from DRNC corroborated the allegations in Plaintiffs' Complaint.

10.    In light of the extent of discovery conducted in this matter, I believe that Plaintiffs have sufficient information to understand the likelihood of success on the merits should this case go to trial, to evaluate the risks associated with trial, and to make an informed decision regarding settlement.

11.    The parties have exchanged countless letters regarding discovery disputes. Three of these disputes resulted in contested hearings.

**Settlement Negotiations**

12.    The Parties first discussed settlement during an in-person mediated settlement conference on December 4, 2024 with mediator Frank Laney.

13.    Although the Parties did not reach settlement then, the Parties continued to discuss potential settlement, both directly and through Mr. Laney.

14.    The Parties and Mr. Laney reconvened for a second, remote mediation on March 12, 2025.

15. Throughout the remainder of the year, counsel for the Parties negotiated the terms of the proposed settlement agreement directly via email and conference calls, exchanging numerous drafts.

16. Plaintiffs' counsel believed then, as now, that a negotiated settlement was the most effective means of securing certain and lasting relief for the class.

17. The Parties therefore asked the Court three times to extend case deadlines so that the Parties' counsel focus on settlement.

18. On January 6, 2026, the Parties held their third mediated settlement conference with Mr. Laney in Raleigh. The in-person mediation lasted more than twelve hours and brought the Parties close to settlement.

19. After the mediation, the Parties continued to exchange drafts of the settlement agreement and to negotiate via numerous conference calls between counsel.

20. On February 26, 2026, the Parties reached a settlement in principle and notified the Court.

**The Settlement Agreement**

21. The Proposed Settlement Agreement primarily addresses NCDPS's use of room confinement at the Cabarrus JDC, the overall conditions of confinement at the Cabarrus JDC, and systems for ensuring compliance with the terms of the agreement.

22. In keeping with NCDPS's internal nomenclature, the Proposed Settlement Agreement separates room confinement into two categories: Temporary Room Confinement ("TRC") and Administrative Room Confinement ("ARC"). These

designations differ in name only: the end result is the same; under either designation, a juvenile is locked in his cell alone.

23. The provisions of the Proposed Settlement Agreement relating to Temporary Room Confinement represent a significant departure from NCDPS's current policy regarding what it terms "Temporary Room Confinement," which allows NCDPS to place juveniles in room confinement "to protect the juvenile from himself; to protect others from the juvenile; to protect state or personal property from destruction by the juvenile; or to protect the security and/or orderly management of the detention center."

24. The provisions of the Proposed Settlement Agreement relating to Temporary Room Confinement adequately address allegations made in Plaintiffs' Complaint which, have been corroborated during discovery.

25. Plaintiffs believe that discovery has shown that NCDPS routinely imposes Temporary Room Confinement for extended periods of time even when juveniles no longer present (or never presented) a threat to others.

26. Plaintiffs allege—and believe that discovery has demonstrated—that NCDPS staff members routinely impose room confinement for set periods of time in response to relatively minor rule infractions, such as juveniles trading snacks or talking back to staff members.

27. The Proposed Settlement Agreement makes only minor changes to NCDPS's ability to use what it terms Administrative Room Confinement for medical, weather, and security reasons. This is because Plaintiffs did not challenge NCDPS's use of these specific

5

justifications for room confinement. Plaintiffs have also not seen discovery materials suggesting that NCDPS's use of these three forms of Administrative Room Confinement violates the U.S. Constitution. Accordingly, Plaintiffs do not believe that leaving policies for such forms of Administrative Room Confinement intact impacts the benefits of the Proposed Settlement Agreement.

28. The Proposed Settlement Agreement addresses NCDPS's overuse of room confinement to address staffing shortages. Based on their own experiences, discovery conducted in this matter, and Defendants' representations, Plaintiffs believe that chronically low staffing is one of the root causes of NCDPS's use of solitary confinement in the Cabarrus JDC.

29. Defendants have represented that the Prison Rape Elimination Act ("PREA") requires them to maintain a ratio of one certified staff member to eight juveniles while juveniles are out of their cells during waking hours and have used Administrative Room Confinement (Staffing) when staffing ratios dip below that level.

30. The Proposed Settlement Agreement aims to help the Cabarrus JDC solve its staffing shortage and mitigate the impact on class members if the Cabarrus JDC drops below the 1:8 PREA ratio.

31. The Parties have agreed that Teresa Abreu will serve as the Monitor responsible for evaluating Defendants' compliance with the terms of the Proposed Settlement Agreement. Ms. Abreu is an attorney with significant experience serving as a monitor in other cases involving the juvenile justice system.

6

32.     My colleagues and I have interviewed Ms. Abreu multiple times, and I believe that she will adequately protect the interests of the class in overseeing the implementation of the Proposed Settlement Agreement.

**Plaintiffs' Decision to Settle**

33.     I believe Plaintiffs have a strong case.  If this case goes to trial, I expect Plaintiffs will elicit testimony proving that NCDPS kept Plaintiffs and other juveniles at the Cabarrus JDC in isolation for long periods of time and that such isolation harmed them, in violation of the Eighth and Fourteenth Amendments to the federal Constitution.

34.     Plaintiffs are, however, cognizant of the risk of trial.  If tried, Plaintiffs would primarily have to prove their case through incarcerated juveniles, many of whom are impacted by mental health conditions, and adverse witnesses employed by Defendants.

35.     The class is, by nature, transient, meaning that few witnesses would have knowledge of the conditions at the Cabarrus JDC over long periods of time.  Plaintiffs themselves are no longer incarcerated at the Cabarrus JDC.

36.     All current detainees—the only witnesses to the current conditions at the Cabarrus JDC—are in Defendants' control, and Defendants have repeatedly resisted Plaintiffs' efforts to meet with such class members, which would materially impact Plaintiffs' ability to prepare for trial.

37.     Continuing to litigate this case would involve significant expense to both Parties.  By settling, the Parties have avoided expert depositions, briefing dispositive motions, briefing *Daubert* motions, pre-trial motions practice, and a bench trial.  Due to

7

the importance of the issues at stake in this litigation, both sides likely would have invested significant resources in vigorously litigating the remainder of this case.

38. I have no reason to believe that the class would receive meaningfully better relief after trial. The risks of trial render settlement a reasonable way to ensure that the class's constitutional rights are protected.

**Notice to the Class**

39. No class members have contacted class counsel objecting to the terms of the Proposed Settlement Agreement.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 6, 2026

Robert L. Lindholm

8

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

Dated: August 6, 2026                    */s/ Robert L. Lindholm*
Robert L. Lindholm (N.C. Bar No. 52800)
Nelson Mullins Riley & Scarborough LLP
301 South College Street
23rd Floor
Charlotte, NC 28202
(704) 417-3000
robert.lindholm@nelsonmullins.com

9